UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL JAMES HOLMES, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) No.  4:08-CV-1142 (CEJ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM**

This matter is before the Court on the motion and amended motion of Michael James Holmes to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255. The United States has responded, and the issues have been fully briefed.

On June 28, 2006, Holmes was found guilty of possession of more than 50 grams of a substance containing cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count I), and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  Because of his prior felony drug conviction, Holmes was subject to a mandatory minimum sentence of 20 years' imprisonment for Count I.  See 21 U.S.C. § 841(b)(1)(A)(iii).  He was sentenced on November 13, 2006, to a 240-month term of imprisonment on Count I and a consecutive 60-month term of imprisonment on Count II.  The judgment was affirmed on appeal.  United States v. Holmes, 231 Fed. Appx. 535 (8th Cir. 2007).

As grounds for relief in the instant motion, Holmes asserts allegations of ineffective assistance of counsel at trial and on appeal.  He also challenges the constitutionality of a search conducted by the police and the admission of certain evidence at trial.  Finally, Holmes claims that he is entitled to a new trial based on newly

discovered evidence of criminal activity and official misconduct by two police officers who testified against him.

I. Background

    A. Evidence Presented at Trial

In December 2003, an informant told St. Louis police officer Shell Sharp that cocaine base was being sold from a house located at 5894 Cates Avenue by a man identified as "Big Mike." The informant described Big Mike as a 270-pound black male, between 40 and 45 years old. According to the informant, Big Mike kept a firearm in the residence. On December 9, 2003, Sharp and St. Louis police officer Alan Ray established surveillance near the residence and saw a man who fit the description given by the informant. At trial, Sharp identified the man as Holmes. During the surveillance, Holmes was seen coming out of the residence carrying a brown bag from which he would remove an item and hand it to another individual. Sharp testified that he observed Holmes engage in three of these "hand-to-hand" exchanges which appeared to be drug transactions.

Sharp and Ray approached the house and knocked on the door. Maetta Griffin, Holmes' grandmother, answered and identified herself as the owner of the residence. After the officers explained what had led them to her home, Ms. Griffin signed a consent to search form. Sharp and Ray entered the house and saw Holmes coming down the stairs from the third floor. After Holmes saw the officers, he turned and dropped a brown paper bag as he ran back up the stairs. Sharp retrieved the bag and found that it contained 239 grams of cocaine base inside a plastic bag. In a third floor bedroom, the police found a loaded shotgun, ammunition, an open safe containing $4,000 in U.S.

currency, six grams of heroin, and paraphernalia (glass measuring cups, a digital scale, a roasting pan, plastic baggies, and a plastic bag of rubber bands) associated with drug distribution. Also in the room was a letter addressed to Holmes at 5894 Cates. As the police were leaving the house, they found a second firearm behind the front door. Holmes was taken into custody and was given the Miranda warnings. According to the testimony, Holmes told the officers that he lived in the bedroom on the third floor.

Sharp testified that Holmes and his grandmother were the only people found inside the house. There were two other black men at the residence, Keith Valentine and Michael Green. Sharp testified that both were found outside the residence. However, in his police report, Sharp wrote that the two men were located during a sweep search of the first floor of the house.

Officer Sharp was the sole witness to testify about the suspected drug transactions observed during the surveillance and about Holmes' possession of the brown bag inside the residence. Officer Ray did not testify because he was on military duty in Iraq at the time of trial.

A single fingerprint belonging to Holmes was found on bag of rubber bands. Officer Sharp and an expert witness testified that rubber bands are commonly used by drug dealers to wrap their currency. The expert witness further acknowledged that there are a "million uses" for rubber bands. United States v. Michael James Holmes, No. 4:05-CR-522 (CEJ) (E.D.Mo.), Doc. # 84, p. 366. There was no evidence that the $4,000 found in the safe were secured by rubber bands. Also, Holmes's fingerprints were not found on any other item of evidence that was seized. Fingerprint analysis was performed on the paper and plastic bags that contained the cocaine base, the glass

measuring cups, the scale and the roasting pan. Some of the fingerprints found on these items were unidentifiable and some belonged to Sharp. There was no fingerprint analysis of the firearms.

Pursuant to Rule 404(b), Fed. R. Evid., the government presented testimony concerning the execution of a search warrant at 1459 Goodfellow on January 5, 1995. According to St. Louis police detective Bobby Garrett, Holmes was arrested at the residence after the police found cocaine base in his possession. Garrett further testified that Holmes made an oral statement admitting that he sold drugs. On the same day of his arrest, Holmes made a complaint to the Internal Affairs Division of the St. Louis Metropolitan Police Department in which he claimed that Garrett and other officers had planted drugs in his house and that they had physically and verbally abused him. The IAD conducted an investigation, and the charges against the officers were not sustained. Holmes later entered an Alford plea to drug charges stemming from the January 5, 1995 incident.[1]

At trial, Holmes testified that he once rented the third floor bedroom at the Cates residence and that others, including Keith Valentine, also rented rooms in the house. He testified that he moved out in February 2002; however, mail addressed to him continued to be delivered there. On December 9, 2003, Holmes was called to the Cates residence. He left work and arrived there around 3:00 p.m. Several of his relatives and Keith Valentine were there. He visited with them in the third floor bedroom which was then occupied by one of his relatives, Dwayne Hollinshed. After awhile, the group decided to leave and all but Holmes went outside. Holmes went downstairs where he

---

[1] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

stopped to talk to his grandmother. He then returned to the third floor to use the bathroom. Holmes testified that he was in the third floor hallway when a police officer (not Sharp) arrested him. He testified that he did not have a bag in his possession. Holmes denied ownership and possession of the drugs, firearms and other evidence found in the residence.

### B. Evidence Discovered after Trial

In 2009, Sharp became the target of an Internal Affairs investigation into police corruption. There were allegations that Sharp had made false statements about informants and surveillance activities in affidavits that were submitted to obtain search warrants. It was also alleged that he gave perjured testimony in court. According to media reports, concerns about Sharp's credibility prompted the prosecuting attorney for St. Louis City to drop cases in which Sharp had been involved.

In 1998, Sharp testified for the government at the trial of Stephen Jones, who was prosecuted for possession of cocaine base with intent to distribute. According to the testimony, Sharp and Detective Vincent Carr saw Jones drop a bag of cocaine base as he was running down the hallway of a house. Jones maintained that the officers lied about his possession of the drugs. In February 2009, Carr pled guilty to wire fraud, making a false statement, and obstruction of justice—charges stemming from conduct he engaged in as a police officer. Jones filed a motion for a new trial based on the newly discovered evidence of Carr's misconduct. The government conceded the motion and joined in Jones's motion for a certificate of actual innocence. In doing so, the government stated that it could not vouch for the credibility of either Carr or Sharp. United States v. Stephen Jones, No. 4:10-CV-1748 (CEJ)(E.D. Mo.)[Doc. # 8 and # 14].

In August 2009, Detective Garrett pled guilty to felony charges of theft of government funds, wire fraud, making a false statement, and misapplication of property under the control of a federally-funded state agency.  All of the charges arose from Garrett's misconduct in 2007 and 2008 while acting as police officer.  Garrett admitted that he stole money and other property that was seized during searches that he and other officers  conducted, and that he and his accomplices made false statements and falsified documents to conceal their actions.  Garrett was sentenced to a 28-month term of imprisonment.

In 2010, Matthew Cox filed a § 2255 motion to vacate alleging that in 1997 Garrett submitted a false affidavit in applying for a search warrant.  Matthew Cox v. United States, No. 4:10-CV-1572 (CEJ) (E.D.Mo.) [Doc. # 1].  The government initially opposed the motion, arguing that the crimes to which Garrett pled guilty were committed 10 years after Cox's trial and, therefore, Garrett's conviction did not justify a new trial based on newly discovered evidence.  Id. [Doc. # 4].  However, the government later stipulated that Cox had made "a substantial preliminary showing, by sworn offer of proof and otherwise, that false statements and omissions may have been made with reckless disregard for the truth by the sole Affiant to the aforesaid search warrant sufficient to mandate a testimonial hearing pursuant to Franks v. Delaware, 438 U.S. 154, 155-156 (1978)."  Id. [Doc. # 9].  The government further stipulated that it "would be unable to offer relevant credible evidence in defense of the affidavit in support of the search warrant in the event of a Franks hearing."  Id.

II. Discussion

A movant seeking a new trial on the basis of newly discovered evidence must prove that (1) the evidence was unknown or unavailable to him at the time of trial; (2) the failure to discover the evidence was not due to his lack of diligence; (3) the evidence is material and is not merely cumulative or impeaching; and (4) the evidence is such that it would probably result in an acquittal upon retrial. United States v. Winters, 600 F.3d 963, 970 (8th Cir.), cert. denied, ___ U.S. ___, 131 S.Ct. 255, 178 L.Ed.2d 169 (2010); United States v. Fuller, 557 F.3d 859, 863-864 (8th Cir. 2009). "The standard for a new trial on the basis of newly discovered evidence 'is rigorous because these motions are disfavored.'" United States v. Hollow Horn, 523 F.3d 882, 889 (8th Cir. 2008), quoting, United States v. Baker, 479 F.3d 574, 577 (8th Cir. 2007).

In this case, there is no disagreement between the parties as to whether the evidence was unavailable to the Holmes or whether it could have been discovered through the exercise of due diligence. What is in dispute is whether Holmes has satisfied the remaining criteria for obtaining a new trial based on newly discovered evidence.

Evidence that is merely impeaching does not meet the materiality requirement for a new trial based on newly discovered evidence. See United States v. Coplen, 565 F.3d 1094, 1096 (8th Cir. 2009) (new trial is not warranted when the additional evidence would be merely impeaching). Here, the government argues that the newly discovered evidence could only serve to impeach the police officers' testimony. The government also argues that evidence of official misconduct by Sharp and Garrett is not likely to result in an acquittal if a new trial is granted. In support of this argument, the

7

government cites to English v. United States, 998 F.2d 609, 612 (8th Cir.), cert. denied, 510 U.S. 1001 (1993), for the proposition that the Court must consider "the other witnesses who testified at the trial, including Petitioner, and all of the other evidence that the Government introduced at the trial." *Govt's Supplemental Response*, p. 9 (Doc. # 33).

There was no witness other than Sharp who testified about the information provided by the informant.  There was no witness other than Sharp who testified to seeing Holmes engage in hand-to-hand drug transactions outside the Cates residence.  There was no witness other than Sharp who testified to seeing Holmes drop the bag of cocaine base and to the incriminating statements Holmes made upon arrest.  Likewise, there was no witness other than Garrett who testified to Holmes 1995 admission of drug trafficking.  The fact that the government now has two witnesses---Officer Ray and Officer John Weiter--- who could corroborate Sharp's and Garrett's testimony is immaterial.  The jury never heard Officer Ray or Officer Weiter, and Holmes did not have the opportunity to cross-examine them.  In this important respect, this case differs from those in which newly discovered evidence of a  witness's misconduct was deemed not material because of the existence of other, corroborating evidence presented at trial.

For example, in United States v. Antonio Harris, No. 4:07-CR-321 (CEJ) (E.D.Mo), this Court denied the defendant's motion for a new trial that was based on the newly discovered evidence of criminal conduct by a police officer who had testified against him at trial.  The defendant had been found guilty of possession with intent to distribute cocaine base.  The Court found that the defendant could not establish materiality because the officer's conviction arose from crimes he committed months after the defendant's trial, the convicted officer was not the person who found the cocaine base,

and there was no challenge to the credibility of the officer who testified about finding the cocaine base.  Id. [Doc. # 136].

In Thompson v. United States, 2011 WL 553794 (N.D. Ga. Feb. 3, 2011), the movant sought a new trial based on the criminal convictions of two police officers who had been involved in a search of his apartment.  In denying the motion, the court pointed to the "substantial evidence" of the movant's role in drug trafficking that existed apart from the officers' misconduct:

> When the six officers entered the Oglethorpe Avenue apartment, they found four people inside, as well as over 100 grams of cocaine, 50 grams of crack cocaine, 318 doses of ecstasy, two guns, baggies, and scales. The drugs were found in a safe, in both bedrooms, in a closet, and in the kitchen. Believing that six officers planted all of that evidence and photographed it in the presence of four suspects requires a big stretch of the imagination.
>
> And in addition to the drugs, guns, and paraphernalia, the officers found "[d]ocuments that were undisputedly Thompson's," including three traffic citations that Thompson had received less than two miles from the Oglethorpe Avenue address and while driving a car owned by another occupant (who unquestionably was involved in the drug operation). . . . The police also found a Red Cross application filled out by Thompson and dated just one day before the search. . . . Finally, there was a list of phone numbers and nicknames-a drug dealer's address book-that matched Thompson's cell phone records. . . . All of these documents were found in one of the bedrooms, along with more than 100 grams of powder cocaine and 10 grams of crack. In addition to the amount of drugs, the paperwork that undoubtedly belonged to Thompson connected him to the Oglethorpe Avenue address and dispels any reasonable inference that the evidence against him was somehow faked.
>
> Id. at *8 (citations omitted).

The court also considered that movant gave inconsistent testimony at trial, and the evidence of his six prior felony convictions, his lies to the police about his identity, and his false testimony at an earlier hearing.  Id. at *9.  The court further noted that the movant "does not even argue that the evidence against him was fabricated; instead, he

9

argues essentially that he could impeach the officers in a new trial in light of their later misconduct. But to the extent that is his goal, under *Jernigan* impeachment evidence alone is not enough to merit a new trial." Id. [*citing* United States v. Jernigan, 341 F.3d 1273, 1287 (11th Cir. 2003)].

In contrast to Thompson, the evidence apart from Sharp's and Garrett's testimony *(i.e.*, the letter and the fingerprint) can hardly be considered "substantial" evidence of Holmes's involvement in illegal activity.  Indeed, such evidence would have been insufficient to establish guilty beyond a reasonable doubt.  Also, Holmes did not give conflicting or inconsistent testimony at trial, and there was no evidence that he had made false statements to the police or in any court proceeding.  Further, Holmes has consistently maintained that he is innocent and that Sharp and Garrett lied in their testimony.  The Thompson court also considered the fact that the police officers' convictions were based on conduct that occurred after movant's trial.  That is not the case here.  As discussed above, the government has acknowledged that it cannot vouch for the  credibility of testimony given by Sharp and Garrett 1997 and in 1998----some nine years before Holmes's trial.

### III.  Conclusion

There has been no claim that the government knowingly presented perjured testimony at Holmes's trial and there is nothing to support such a claim.  Indeed, it is the Court's firm belief that at the time of the trial the government had no reason to question the credibility of its witnesses.  However, the witnesses have now been discredited, and the government would not have been able to meet its burden of proof with the remaining evidence.  Thus, for the reasons discussed above, the Court finds that Holmes has met his burden of establishing his entitlement to a new trial based on

10

newly discovered. Because Holmes will receive a new trial, it is unnecessary to address his additional claims regarding the admissibility of evidence and ineffective assistance of counsel.

A separate Order granting the movant's request for relief will accompany this Memorandum.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 26th day of September, 2011.