UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL J. HOLMES, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No. 4:08-CV-1142 CEJ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**GOVERNMENT'S SUR-REPLY TO
PETITIONER'S REPLY TO GOVERNMENT'S RESPONSE**

COMES NOW Respondent, the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Matthew T. Drake, Assistant United States Attorney for this District, and submits this response to "Movant's Reply to Government's Response." The Government submits this response only to address issues that Petitioner, Michael Holmes, raised for the first time in his reply to the Government's response. In support thereof the government states as follows.

In his reply, Petitioner, Michael Holmes (hereinafter "Petitioner") addressed a prior conviction that he received in 1996, evidence of which was presented at trial. Petitioner states that, "[t]he Government relied on evidence of a conviction that did not exist both in obtaining Mr. Holmes' wrongful conviction and in seeking to prevent the appellate court from correcting that injustice." Reply Brief, p. 4. That is not the case. While Petitioner may have entered an "Alford Plea" to a charge in 1996, he nevertheless pled guilty to, and was convicted of, a felony drug offense. Petitioner's present Exhibit 1 demonstrates this fact. The Government properly introduced evidence of the conviction at trial; namely, that in 1996, Petitioner entered a guilty plea to, and was convicted of, possession of a controlled substance with the intent to distribute.

*See*, Trial Transcript, p. 343. Petitioner also acknowledged the prior conviction and sentence at trial. Trial Transcript, p. 471. Petitioner's present Exhibit 1 (one page of a five page docket sheet) and Exhibit 2 (a MULES printout reflecting Petitioner's prior conviction) are insufficient to fully describe and illustrate the history of Petitioner's conviction and sentence. Rather, the Government's trial exhibit (Government Exhibit 20), which was properly offered and accepted, best reflects the disposition. Exhibit 20, Petitioner's prior conviction, reflects his prior criminal activities with respect to the possession and distribution of controlled substances as they relate to his knowledge, motive, intent, and absence of mistake, concerning the events of December 9, 2003. The issue concerning the sentence of probation that was imposed, or any possible revocation and matters addressed before the appellate court, do not constitute proof of innocence in the present proceeding and petition, as required by statute.

Petitioner next addressed the dismissal of the Indictment and the charges filed against him. Petitioner states that, "[t]he Government also argues that it did not seek to retry Mr. Holmes because evidence was somehow 'lost.'" This is not what the Government argued and it is not the case. Petitioner mis-states and mis-characterizes the Government's arguments. There were multiple reasons why the Government did not pursue charges against Petitioner following the Court's order vacating the conviction and the order for a new trial. The Government argued in its response that no inferences can or should be drawn from the decision to dismiss the Indictment. Government Response, p. 10. Further, the Government did not state that evidence was "lost" as Petitioner quotes. Rather, the Government stated in its response that, "[t]he decision to dismiss the underlying indictment was based significantly on the fact that the evidence seized during the investigation, the same evidence presented in the original trial, had

2

been destroyed in the ordinary course of police business by the time that the Court ordered a new trial." Government Response, p. 10. That is a different proposition than Petitioner's claim that the government "lost" evidence. The government's dismissal was consistent with practices and principles governing federal prosecution.

Petitioner next devotes a significant portion of his reply to the assertion that he did not live at 5894 Cates, the location where he was arrested on December 9, 2003. For the first time, Petitioner supplies five previously unidentified exhibits characterized as "overwhelming" evidence that Holmes did not reside at 5894 Cates at the time of his arrest. These exhibits are unauthenticated documents and records. They are not supplied with an affidavit or other certification demonstrating their authenticity. Petitioner offers no other supplemental affidavits or other admissible evidence from witnesses in support of his argument on the issue of his residency. None of the exhibits are "official" or self authenticating records. None are residential records such as: a lease, mortgage, tax returns, insurance documents, property tax receipts, pay stubs, etc. As addressed below, collectively the exhibits are insufficient to demonstrate that Petitioner resided at 200 Suburban, Ferguson, Missouri. Even if they did demonstrate that fact, they remain insufficient to prove that Petitioner is indeed innocent as the statute requires. Furthermore, the issue is not where Petitioner resided in December 2009, nor was that the issue at trial. Rather, it is whether Petitioner was engaged in criminal activities and the narcotics distribution occurring at 5894 Cates. Each of Petitioner's new exhibits is addressed respectively.

Exhibit 4 purports to be a letter from an individual identified as Ron Stedman. The letter, dated January 9, 2006, states that Michel Holmes is listed as an emergency contact for two other

individuals. It further indicated that the "Michael Holmes Family" was residing at 200 Suburban Ave., Ferguson, Missouri from 2002 to 2005. First, the letter is dated January 9, 2006, and it indicates that, as of that date, the "family" resided at the address. Second, the letter does not state Michael Holmes, the Petitioner, ever lived at the address - only that "the Michael Holmes Family" did and that Michael Holmes was listed as an emergency contact.

Exhibit 5 purports to be a police report indicating that an incident occurred between October 28 and 29, 2003, at 200 Suburban. The victim in the report is identified as Michael Holmes. However, there is no narrative with the incident report or in Exhibit 5. The report does not indicate that Holmes was interviewed or that he provided the address listed on the report as his residence.

Exhibit 6 appears to be a rental agreement from Rent-A-Center dated November 6, 2003. Michael Holmes is listed as the "consumer." While 200 Suburban appears on the documents, the records do not indicate that this location was Holmes' residence or his living quarters. The documents do not appear to be signed by Holmes. Similarly, Exhibit 7 appears to be Rent-A-Center receipts. The date on the exhibit is illegible, but appears to be from an initial receipt for $200.00, dated July 5, 2002, a year and a half before Petitioner was arrested at 5894 Cates. The remaining dates on the receipts appear to be illegible

Exhibit 8 also appears largely illegible, but the document appears to be an order for satellite service. Michael Holmes' name appears on the second page of the exhibit, on a rebate form, where his name is listed as an account holder, The document appears to be dated February 14, 2003, and 200 Suburban may appear on the form (given the quality it is difficult to state). As with the other exhibits, the document does not state that the 200 Suburban was

4

Petitioner's residence. It only appears to indicate that Petitioner was listed as a "name on [the] account" at the address. It is also dated ten months prior to his arrest in December 2003 and is not demonstrative of residency.

These exhibits amount to assertions that are insufficient to prove that Petitioner is indeed innocent - the burden Petitioner bears. They are not admissible evidence of Petitioner's residency. Even if they were, the fact that Petitioner *may* have lived at 200 Suburban in 2003, does not mean that he did not distribute controlled substance from 5894 Cates on December 9, 2003, or that he is innocent. In fact, it is common for drug dealers to keep and store illegal narcotics at "safe houses" or locations other than their residences or the locations where such dealers stay.

The salient point is not whether Petitioner lived at 5894 Cates or 200 Suburban. Rather, it remains: (1) whether Petitioner was associated with, and had ties to, 5894 Cates on and before December 9, 2003, and (2) whether he was involved in the criminal activities at the location. The evidence strongly demonstrates that he was affiliated and associated with the residence. As noted in the Government's response, it is undisputed that Petitioner was at 5894 Cates, and specifically in the third floor room where narcotics, drug paraphernalia and other evidence was located on December 9, 2003. He was there in the days and weeks prior to his arrest on that date. Petitioner affirmatively stated as much at trial. Trial Transcript 461, 469. The Government's prior response also demonstrates that Petitioner was involved in the underlying criminal activities.

Petitioner offers no new admissible evidence in his reply that would demonstrate his innocence and which would constitute "proof" as the statute requires. Inasmuch, and for the

5

reasons outlined in this response, the government respectfully requests an order denying petitioner motion and his request for a certificate of innocence.

                                          Respectfully Submitted,

                                          RICHARD G. CALLAHAN
                                          United States Attorney

                                          */s/ Matthew T. Drake*
                                          MATTHEW T. DRAKE # 46499MO
                                          Assistant United States Attorney
                                          111 S. 10th Street, 20th Floor
                                          St. Louis, Missouri 63102
                                          (314) 539-2200

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 5, 2012, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following.

      Richard K. Dowd
      Attorney at Law
      (Attorney for Movant)

                                            */s/ Matthew T. Drake*
                                          MATTHEW T. DRAKE #46499MO
                                          Assistant United States Attorney