UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL J. HOLMES, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | No. 4:08-CV-1142 CEJ |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**GOVERNMENT'S RESPONSE TO PETITIONER'S SUPPLEMENTAL REPLY IN SUPPORT OF A MOTION FOR CERTIFICATE OF INNOCENCE**

COMES NOW Respondent, the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Matthew T. Drake, Assistant United States Attorney for this District, and submits this response to Petitioner's Supplemental Reply in support of his motion for a certificate of innocence.  In support thereof, Respondent states as follows.

On September 26, 2014, Movant and Petitioner Michael Holmes (hereinafter referred to as "Petitioner") filed a "Supplemental Reply Due to Newly Discovered Evidence In Support Of Motion For Certificate Of Innocence." (Doc. # 54). With his supplemental reply, Petitioner attached numerous exhibits.  Petitioner requested that "the government should withdraw their objection and join in the Motion for Certificate of Innocence, as they did in Jones, because of the almost identical fact situation presented to the Court as in Jones."  (Supp. at 14).  Respondent disagrees with Petitioner's characterization and maintains Respondent's original position respectfully requesting that this Court deny Petitioner's motion and his request for a certificate of innocence.

1

For the convenience of the Court, Respondent will address the evidence and arguments asserted by Petitioner in his Supplemental Reply.

As the Court is aware, Officer Sharp was the principal law enforcement witness who testified at Petitioner's trial.  Respondent set forth a detailed synopsis and statement of facts concerning this case in Respondent's original Response.  Doc. # 47.  In his Supplemental Reply, Petitioner claimed that Officer Sharp's testimony was "totally discredited."  Supp. at 2.  That is not the case.  St. Louis Metropolitan Police Department (STLMPD) report CN-03-144684 detailed the events of December 9, 2003, which gave rise to the charges levied against Petitioner.  See Doc. 43, Exhibit 10.   The report identified numerous officers who were present at the scene, involved in the search of the residence, and who witnessed the events described in the report.[1]  Officer Sharp's testimony at Petitioner's criminal trial reflected the facts outlined in the report and Officer Sharp was subject to cross examination concerning the events and the STLMPD report.

As an initial note, Officer Sharp's testimony concerning the events of December 9, 2003, is not the issue in this case.  Rather, the issue is whether Petitioner has met his burden and provided compelling evidence and proof of his actual innocence.  He has not.  Officer Sharp's testimony is corroborated by reports, other witness testimony, and other evidence of Petitioner's guilt.  Petitioner's characterization of Officer Sharp's testimony and credibility is not the standard nor is it evidence of actual innocence.  Nonetheless, Petitioner offers statements of various law enforcement witnesses concerning the events of December 9, 2003, as affirmative evidence of his actual innocence.  Concerning these statements Petitioner argues two aspects:  first, that the witness statements parallel the STLMPD police report and are therefore unreliable; second, that

---

[1] STLMPD report has previously been supplied as an exhibit attached to Doc. # 43, 50.

2

the witness statements are inconsistent and are therefore similarly unreliable. These aspects do not mean the statements are unreliable nor do they amount to affirmative evidence of Petitioner's claim of actual innocence.

Petitioner addresses STLMPD Officer Alan Ray's statement. Officer Ray was present at the scene on December 9, 2003, and later executed a sworn affidavit as part of Petitioner's post-conviction (Title 26, United States Code, Section 2255) action. The affidavit detailed facts that are substantially similar to, and consistent with, events described in the STLMPD report. [2] As discussed in greater detail below, a third officer (Officer Mowry) also testified to the events of December 9, 2003, consistent with the STLMPD report. Concerning Officer Ray, Petitioner argues that "Officer Ray's Declaration simply parallels Officer Sharp's claims in his police report and trial testimony regarding Mr. Holmes, which has all been proven to be false." Supp. at 5. First, the STLMPD report has not "been proven false." Second, the fact that Officer Ray's affidavit "parallels" the report is neither proof of inaccuracy nor of falsity. The affidavit is Officer Ray's personal statement of his recollection of those events. Petitioner has offered no evidence that Officer Ray falsely attested to his statement. As noted, even if Officer Ray were inaccurate that is not evidence, and does not mean, that Petitioner is actually innocent.

Petitioner also argues that witness statements (Sharp, Ray and Mowry) concerning where Petitioner was first encountered or observed at 5894 Cates Avenue (the location where he was arrested) are in conflict - or alternatively - that they are simply a reiteration of the STLMPD report. Specifically, Petitioner argues that statements made in the STLMPD report, Officer Sharp's trial testimony, sworn statements of Officer Ray in his affidavit, and sworn statements of Officer

---

[2] Officer Alan Ray's affidavit has previously been supplied as an exhibit attached to Doc. # 11, 47.

Mowry concerning where Petitioner was on the rear staircase are inconsistent or false.[3] That is not the case.  Petitioner points out that some witness statements indicate that Petitioner was first seen on the "second" floor (of the rear staircase)[4] while others statements indicate Petitioner was observed "close to the third floor" (of the rear staircase).  Petitioner also points to statements indicating that officers entered the residence and saw Petitioner "descending the stairs."[5] Petitioner notes other, statements that indicate Petitioner was observed upon officers "entering the house." (Supp. at 2-3).  When taken as a whole, any minor discrepancies in when and how Petitioner was first observed by various witnesses is to be expected among reports and testimony.  Once again, even if the witnesses' collective statements are slightly inconsistent, it does not mean they are inaccurate and it is not evidence that Petitioner is actually innocent.

In his Supplemental Reply, Petitioner provides a transcript from a deposition of Officer Mowry, an officer who was present at the residence on December 9, 2003.  See Supp. at 6, Exhibit 4.  Petitioner argues that the lack of Officer Mowry's individual observations in the STLMPD report suggest that he was inaccurate or in his deposition testimony or testified falsely.  Supp. at 4.  Again, that is not the case.  Observations of every individual officer at a crime scene are typically not included in police reports, nor is every detail and fact presented in reports.  Reports are a synopsis of the events.  Officer Mowry testified in his deposition that his "role" was "the backup, security type position," not a principal observer and he did not pursue or arrest Petitioner.  Supp.

---

[3] Petitioner attached Officer's Mowry's statements taken from a deposition as an exhibit to his Supplemental Motion. Petitioner also attached photographs depicting the layout and floor plan of the residence and specifically the location of the rear staircase.

[4] Officer Sharp testified he saw Petitioner "on the rear stairwell" "on second floor."  The stairwell that led "from the first floor to the second" and we observed them [sic] close to the third floor." Transcript at 256, Supp at 3.

[5]  In his affidavit, Officer Ray's stated "….we entered the residence. Officer Sharp and I saw Mr. Holmes descending the stairs. When Mr. Holmes saw us, he dropped the paper bag and ran up the stairs to the third Floor."   Supp at 5, and Exhibit 10 to Petitioner's original Motion at 2.

Exhibit 4 at 6. Officer Mowry stated that "when we – when they received consent to search and we made entry into the front – the front door, there was a subject that – who the – the Defendant threw down a bag and went running up the stairs.  I – I stayed on the first floor."  Officer Mowry continued that he understood "the individual [he] saw on the stairs to be Michael Holmes." Supp.at 7, Exhibit 4 at 7.  Officer Mowry also testified that when he entered "the home" "Mr. Holmes was walking down the staircase. . . he had a surprised, shocked look on his face when he saw that there was police officers coming in.   And he dropped the baggy and took off up the stairs, trying to get away I suppose."  Supp. at 7, Exhibit 4 at 8.   Later in the deposition, Officer Mowry testified that Petitioner was "about a third of the way down from the top [of the stairs]." Supp. at 8, Exhibit 4 at 12.   Petitioner argues that Mowry did not and could not have seen Petitioner.

Petitioner argues, on the one hand, that consistency among witness statements with the STLMPD report is evidence of inaccuracy or falsehood.  Essentially, Petitioner claims that at least three, and possibly more officers, are all consistently inaccurate about the events of December 9, 2003, or that have all colluded and misrepresented the facts.  On the other hand, Petitioner also argues that discrepancies among the officers' recollections and observations are also evidence of inaccuracy or misrepresentation.  Neither is the case.  As noted, any minor discrepancies are to be expected among reports and testimony, some of which was provided in a deposition nearly a decade after the events at issue.

The salient point of all the witness statements is that all witnesses (Sharp, Ray ad Mowry) recalled and stated that Petitioner was first observed or encountered at, around, and near the rear staircase of 5894 Cates Avenue on December 9, 2003.  Two witnesses were subjected to cross examination - Sharp (at trial) and Mowry (in a deposition) on these issues.  Further, the credibility

5

and recollections of Officers Ray and Mowry have not been called into question.  Once again, these statements do not amount to evidence of Petitioner's actual innocence as the statute requires.

Petitioner supplied photographs of the rear staircase of 5894 Cates Avenue, as exhibits. These photographs illustrate the difficulty in describing the floor plan and layout of the building and specifically the staircases.   Undersigned counsel is informed that while 5894 Cates Avenue is a single building and structure, that was modified, altered, or remodeled to include living space for multiple individuals.  Thus, when Officer Sharp testified at trial concerning what he observed when he was "inside the residence" and that "on the rear stairwell leading to the upstairs, I observed . . . the Defendant (Petitioner) coming down the steps," it is unclear to which "residence" Officer Sharp was referring.  Presumably, the reference was to the entire premises (residence) of 5894 Cates Avenue as opposed to any residence on the third floor of 5894 Cates Avenue, or another residence within the building.

It is undisputed, and the parties agree, that petitioner was present at 5894 Cates on December 9, 2003.  It is undisputed that multiple STLMPD Officers stated that they located and seized narcotics, drug paraphernalia, cash, and firearms from 5894 Cates on December 9, 2003. Petitioner still offers no statements from witnesses who are known to him and were present at the residence on December 9, 2003, concerning who could have committed the offenses related to the possession of narcotics, the distribution of narcotics, or the possession of firearms.[6]  It is undisputed that at least three witnesses stated that they observed Petitioner drop a bag on or near the staircase and flee.  It is undisputed, and the parties agree that Petitioner was arrested inside 5894 Cates, on or near the staircase.  It also undisputed, and the parties agree, that Petitioner was

---

[6] Petitioner also testified that he knew of at least six other individuals who formerly resided at the Cates residence. Trial transcript V. II, p. 453.   He offers no evidence or statements from these persons.

on the third floor prior to his arrest.  At trial, even Petitioner testified that on December 9, 2003, he "went up to the third floor," and sat in the third floor room - the same room where heroine, drug paraphernalia, an open safe with currency, and the shotgun were seized that day just after Petitioner's arrest inside the residence (Petitioner identified the room as Dwayne's room. Trial transcript V.II, p. 461).  Petitioner also testified that he once lived at the residence in the third floor room and that mail in his name continued to arrive there after he relocated. (Trial transcript V.II, p. 470).

As noted by Respondent in the initial Response, to obtain a certificate of innocence, or recover on such claims, Petitioner must show more than just a reversal of a previous conviction. The petitioner must affirmatively prove: (1) that "his conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted;" (2) his conviction was set aside because either (a) "he did not commit any of the acts charged," or (b) "his acts, deeds, or omissions in connection with such charge constituted no offense against the United States;" and finally, (3) that "he did not by misconduct or neglect cause or bring about his own prosecution." Section 2513(a)(1) and (2).  "In plain terms, he must prove that he is actually innocent of the charges brought against him." United States v. Lyons, 726 F.Supp.2d 1359, 1365 (M.D.Fla. 2010). A person who has met the standard set forth in Section 2513(a)(1) must show that they are truly innocent under the first prong of Section 2513(a)(2), and additionally that the same, non-criminal conduct does not constitute negligence under the second prong of Section 2513(a)(2).  Section 2513 imposes on those who seek a certificate of innocence a rigorous burden of not only alleging, but also proving, entitlement to a certificate. United States v. Graham, 608 F.3d 164, 171 (4th Cir. 2010).  Petitioner has only made allegations concerning witness statements, supplemented largely with media reports concerning a single witness.

In this case, the statutory inquiry is not whether the circumstances presented by a claimant, such as insufficient evidence or newly discovered evidence, would lead one to be found not guilty at trial.  Rather, it is whether one is actually innocent, regardless of the sufficiency of evidence presented at a trial.  Petitioner bears the burden of proof on these elements.  United States v. Lyons, 726 F.Supp.2d at 1365 (M.D.Fla. 2010) citing, Humphrey v. United States, 52 Fed.Cl. 593, 597 (Fed.Cl. 2002).  "The burden of proof in a criminal case is upon the government and it must overcome the presumption of innocence by proof beyond a reasonable doubt.  The proceeding under the statute is not however a criminal trial.  Petitioner is seeking monetary indemnity from the government and is the moving party who asked the court to find and certify a fact and the court should not grant the certificate unless it is satisfied from the record before it that petitioner is altogether innocent."  United States v. Brunner, 200 F.2d 276, 279 (6th Cir. 1953).  See also, United States v. Keegan, 71 F.Supp. 623, 636 (D.C.N.Y. 1947).

Petitioner also argues that:   comments made by United States Attorney Richard Callahan (Supp at 4); the decisions in United States v. Jones, (Supp. at 9-10); [7] and other matters in a STLMPD "IAD" file concerning Officer Sharp are controlling in this case.   On the contrary, none of those issues are evidence or proof of Petitioner's actual innocence.   None of the IAD exhibits supplied by Petitioner concerning those allegations relate to this case.   None of the media articles or IAD exhibits supplied by Petitioner address the facts of this case.   Such articles are comments about an individual witness and media reports about other cases.  Exhibits such as these are

---

[7] Petitioner asserts that "Officer Sharp used the same means of wrongfully convicting Stephen Jones as with [Petitioner] and the SLMPD is continuing to try and prove his guilt through false testimony." Supp. at 10.   Again that is not the case.   In this action the STLMPD is not trying to prove Petitioner's guilt.   This is not a criminal case.  Here, the statute places the burden of proof on Petitioner to obtain a certificate.

8

allegations or reports, and are not evidence or proof that Petitioner is "altogether innocent." United States v. Brunner, 200 F.2d at 279.

Petitioner argues that Officer Sharp's credibility issues warrant a certificate of innocence in this case. Supp. at 10-12.  In support, Petitioner points to Exhibit 6 of a STLMPD IAD file. Upon review, Exhibit 6 contains allegations of instances of identical or "starkingly similar" search warrant affidavits and planted narcotics.  Neither of those allegations exists in this case.  No search warrants were sought or executed by Officer Sharp or any other officer during the investigation.  Similarly, at trial, Petitioner denied knowledge of the narcotics, paraphernalia, or firearms.  However, at trial Petitioner did not testify or claim, as he now implies in his Supplement, that officers "planted narcotics."  Supp. at 11.

Petitioner argues that,"[i]n Jones, this Court found certification of innocence appropriate because the eyewitness evidence of the police officers was completely discredited, there was substantially no evidence that Jones lived on the premises, and Jones presented evidence that he did not in fact reside on those premises. Here, Movant has similarly demonstrated that there is no probative or believable testimony of his guilt, and he has provided overwhelming evidence that he did not reside at the Cates property."  Supp. at 10.  On the contrary, this case is significantly different from Jones.   In this case, Petitioner testified that he previously lived at the residence; that he was present at the residence - on the third floor - just prior to his arrest; Petitioner identified friends and family at the residence; Petitioner's fingerprints were located on items within the residence, near the paraphernalia and narcotics; there are third party witnesses who testify to observing Petitioner drop a bag that ultimately was found to contain narcotics; and, as demonstrated in Respondent's original Response, there is other affirmative evidence of Petitioner's guilt.   Put simply, this is not the same as Jones.

9

As with his initial Motion, Petitioner's Supplemental Reply is based significantly on allegations of misconduct and credibility issues concerning Officer Sharp.  The allegations and any misconduct by the witness do not relate to this case or investigation.  They do not constitute evidence or "proof" of innocence.

WHEREFOE, for the reasons outlined in this response, and the Government's initial response to Petitioner's Motion, the Government respectfully requests this Court deny Petitioner's initial Motion and Supplemental Reply for a certificate of innocence.

Respectfully submitted,

*/s/ Matthew T. Drake*
MATTHEW T. DRAKE – 46499MO
Assistant United States Attorney
Thomas F. Eagleton U.S. Courthouse
111 South Tenth Street,    20th Floor
St. Louis, MO 63102
(314) 539-2200

CERTIFICATE OF SERVICE

      I hereby certify that on December 12, 2014, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

DOWD & DOWD, P.C.
RICHARD K. DOWD (#33383MO)
Attorney for Movant
100 North Broadway, Suite 1600
St. Louis, Missouri 63102
(314) 621-2500
(314) 621-2503 facsimile

                                                */s/ Matthew T. Drake*
                                                MATTHEW T. DRAKE – 46499MO
                                                Assistant United States Attorney
                                                Thomas F. Eagleton U.S. Courthouse
                                                111 South Tenth Street,   20th Floor
                                                St. Louis, MO 63102
                                                (314) 539-2200